UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK PHIPPS,

                        Plaintiffs,

   -against-

EXPERIAN INFORMATION SOLUTIONS, LLC,

                       Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/2023

7:20-CV-3368 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Derrick Phipps ("Plaintiff" or "Phipps"), proceeding *pro se*, brings this action against Defendant Experian Information Solutions, LLC ("Defendant" or "Experian"), asserting a claim under the Fair Credit Reporting Act ("FCRA"). (*See* Amended Complaint ("AC"), ECF No. 4.) Pending before the Court are Defendant's: (1) motion for summary judgment; (2) motion to compel Plaintiff to appear for deposition; and (3) motion for sanctions against Plaintiff (collectively, "Def.'s Motions"). For the following reasons, the Court DISMISSES this action for lack of subject matter jurisdiction and, consequently, DENIES Def.'s Motions as moot.

## BACKGROUND

### I. The Parties' Local Rule 56.1 Statements

The Court notes at the outset that Plaintiff's Response to Defendant's Local Rule 56.1 Statement and Further Statement of Material Facts in Opposition to the Defendant's Motion for Summary Judgment ("Pltf.'s 56.1") (ECF No. 99) does not—other than the first four paragraphs, which are undisputed—respond to each of the assertions in Defendant's Rule 56.1 Statement ("Def.'s 56.1") (ECF No. 86). Rather, Plaintiff has provided documents, most of which were previously filed, that are marked as responses to the remainder of the assertions in Def.'s 56.1.

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") provides "[e]ach numbered paragraph in the statement of material facts set forth [by] the moving party will be deemed admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement [by] the opposing party." Local Rule 56.1(c).

However, it is well established in the Second Circuit that *pro se* litigants receive "special solicitude" and their filings are "liberally construed." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal citations and quotations omitted). Accordingly, the Court will not deem the assertions in Def.'s 56.1 admitted due to Plaintiff's failure to formally comply with Local Rule 56.1(c). The Court will instead review the documents included in Pltf.'s 56.1 and ascertain any disputes of material fact, if able.

## II.     Factual Background

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instance proceeding, which reflect the following factual background.[1]

Defendant operates a consumer credit reporting agency under the guidelines of the FCRA. (Def.'s 56.1 at ¶ 4). Defendant does not originate or create any credit information, but receives it from data furnishers, with such data including, *inter alia*, account numbers, account statuses, payment, and balance information. (*Id.* at ¶¶ 5-6). Defendant also receives consumer identifying information from its data furnishers. (*Id.* at ¶ 6).

---

[1] Citations to "Def. Ex." refer to Exhibits attached to the Declaration of Lisa Wallace in Support of Defendant's Motion for Summary Judgment, Motion to Compel Plaintiff to Appear for Deposition, and Motion for Sanctions (ECF No. 87).

On November 10, 2017, Plaintiff sent a letter to Defendant requesting that his personal information be updated so that it only showed his *current* address. (*Id.* at ¶ 11) (emphasis added). Defendant responded on November 29, 2017 with a number avenues of recourse available to Plaintiff. (*Id.* at ¶ 12). Dissatisfied with a subsequent credit report, Plaintiff sent a letter dated December 15, 2017 requesting an update to his name and address (Pltf.'s 56.1 at p.12), to which Defendant responded in substantially the same manner. (Def.'s 56.1 at ¶ 14). Plaintiff sent a similar letter on January 24, 2018 and received a similar response. (*Id.* at ¶¶ 15-16).

On February 6, 2020, Plaintiff sent a letter to Defendant claiming to have been a victim of identity theft and requesting Defendant block 20 inquiries alleged to have not been made by Plaintiff and twelve closed accounts reporting on his credit file. (*Id.* at ¶ 17). Plaintiff included a Federal Trade Commission Identity Theft Report ("ITR") dated February 6, 2020, that served as Plaintiff's statement claiming he was a victim of identity theft (*Id*. at ¶ 18); *see also*, Def. Ex. D. The ITR alleges, but does not identify, fraudulent charges and accounts; the ITR does identify the names "derek phipps", "derrick K Phipps", "derrick phipp" and the addresses "5857 Quebec ave" and "37951 Ponderilla drive" as fraudulent information on his credit report. (*Id.*) Defendant responded providing a number of avenues of recourse to Plaintiff. (*Id*. at ¶ 19).

Plaintiff sent another letter on March 13, 2020 with the same request, though this time threatening litigation and enclosing a police report Plaintiff made on March 11, 2020. (Def.'s 56.1 at ¶¶ 20-22); *see also*, Def. Ex. E. The police report noted that Plaintiff claimed that someone attempted to open a number of accounts in his name, but failed to identify which accounts or information that was inaccurately reported. Def. Ex. E. Defendant responded on March 28, 2020 noting that the requested information was blocked from Plaintiff's report and with a number of avenues of recourse available to the Plaintiff. (Def.'s 56.1 at ¶ 22); *see also* (Pltf.'s 56.1 at p.39).

Plaintiff commenced this action on April 27, 2020. (ECF No. 1). The last remaining dispute in this matter was Defendant reporting two different birth years for Plaintiff. (Def.'s 56.1 at ¶ 23); *see also* (ECF No. 59). Defendant subsequently updated Plaintiff's information to accurately report his birth year as 1965. (Def.'s 56.1 at ¶ 24); *see also*, Def. Ex. F.

### III.   Procedural History

After commencing this action on April 27, 2020 (ECF No. 1) and pursuant to this Court's order at ECF No. 2, Plaintiff filed an amended complaint on July 9, 2020. (ECF No. 4). After significant back and forth, the parties settled this matter on May 9, 2021. (ECF No. 51). On June 3, 2021, however, the Court received a letter from Plaintiff, which was construed to be a motion to reopen the case. (*see* ECF Nos. 56, 58). Motion practice began, and Defendant filed Def.'s Motions on November 29, 2022. (ECF No. 83).

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). To prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation

4

by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). As noted above, *pro se* litigants receive special solicitude and their filings are liberally construed. *Triestman*, at 470 F.3d at 475.

I.   **Plaintiff's Standing**

To pursue any claim in federal court, a plaintiff must have standing—"an essential and unchanging element of the bedrock cases-or-controversy requirement." *MSP Recovery Claims, Series LLV v. Hereford Insurance Co.*, 66 F.4th 77, 86 (2d Cir. 2023) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 550, 560 (1992) and internal quotations omitted). Standing is an "irreducible constitutional minimum" without which a court may not hear a plaintiff's claim. *Lujan*, 504 U.S

at 560. Standing requires a plaintiff to show: (1) injury-in-fact; i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of[, with such injury] fairly traceable to the challenged action of the defendant, and not . . . the result of independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 560-61 (cleaned up). The party invoking federal jurisdiction—here, Plaintiff—bears the burden of demonstrating they have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021) (citing *Lujan*, 504 U.S. at 561).

In *Ramirez*, the Supreme Court recently provided guidance as to the contours of standing when plaintiffs bring claims under the FCRA. *Ramirez* centered on plaintiffs whose credit reports included a misleading Office of Foreign Assets Control ("OFAC") alert that listed the plaintiffs as "potential match[es]" to entries on OFAC's list of "specially designated nations"—a list which includes terrorists, drug traffickers, and other serious criminals. *Ramirez*, 141 S. Ct. at 2201. In deciding standing under the FCRA, the Supreme Court drew a distinction between plaintiffs whose credit reports were issued to third-party businesses and those whose reports were only shown to be maintained internally by the consumer credit reporting agency. *Id.* at 2208-13. The former had demonstrated they suffered a concrete harm. *Id*. at 2212-13. In reaching that conclusion, the Supreme Court reasoned that when credit report with the misleading OFAC alert is issued to third parties, the affected plaintiffs "suffered a harm with a close relationship to the harm associated with the tort of defamation." *Id.* at 2208-09. Further, the Supreme Court rejected the notion that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210.

Here, Defendant argues that Plaintiff has never shown, or even alleged, that Defendant disclosed inaccurate information to a third party or even that Plaintiff suffered any adverse consequences from the allegedly inaccurate information contained in his credit report. (Def. Mem. of Law in Support of its Mot. for Summary Judgment ("Def. MSJ") at p.9) (ECF No. 84). Relying on *Ramirez*, Plaintiff replies that Defendant's alleged refusal to act may have caused Plaintiff to be the victim of identity theft and that, consequently, Plaintiff has been unable to qualify for loans or refinancing, that his car has been repossessed, and that his house is in foreclosure, all of which have contributed to mental health issues. (Pltf. Response to Mot. for Summary Judgment, Mot. to Compel Plaintiff to Appear for Deposition, Mot. for Sanctions at pp. 3-4) (ECF No. 91). Pltf.'s 56.1 also contains: (1) a letter denying Plaintiff's loan application (the "Loan Application"); (2) a credit report from Factual Data dated August 5, 2021 (the "Factual Data Report"); (3) a second credit report of unknown provenance dated November 19, 2018 (the "2018 Credit Report"); (4) a letter from Select Portfolio Servicing providing notice of foreclosure on Plaintiff's residence (the "Foreclosure Notice"); and (5) a repossession notice from Hudson Valley Federal Credit Union regarding Plaintiff's car (the "Repossession Notice") (Pltf.'s 56.1 at pp.43-49)

Plaintiff has failed to sufficiently demonstrate standing under the Constitution. Generally, the type of personal information that prompted Plaintiff to contact Defendant is wholly different than the misleading messages in *Ramirez* that the Supreme Court found to have sufficiently close relationship to the harms associated with defamation. *Ramirez*, 141 S. Ct. at 2208-09. To be associated with the likes of terrorists and drug traffickers is leagues apart from an incorrect address or year of birth, the latter of which would fall well short of a defamation claim. Moreover, while the Foreclosure Notice and Repossession Notice are evidence of significant

hardship experienced by Plaintiff, they fail to demonstrate a "fairly traceable" line to Defendant's actions and the contested information in Defendant's records. *Lujan*, 504 U.S at 560-61.

The Factual Data Report and Second Credit Report do indicate, though, that Defendant shared at least some of Plaintiff's information with third parties. Still, they fail to show a "concrete injury". *Id*. at 560. First, both reports only indicate Plaintiff's credit score. A court in this District has held that a plaintiff whose credit score has been lowered due to an illegal debt-collection scheme suffers concrete reputational harm and financial harm when, regarding the former, the plaintiff's credit score is disseminated and, regarding the latter, the plaintiff receives a higher interest loan than they would otherwise. *Seaman v. National Collegiate Student Loan Trust 2007-2*, 2023 WL 2975152, at *5, *17 (S.D.N.Y. March 13, 2023). Here, both credit reports indicate factors that affected Plaintiff's credit score, though none relate to the information contested in this matter.[2] The 2018 Credit Report lists the following as "adversely" affecting Plaintiff's credit score: (1) "Ratio of balance to limit on bank revolving or other rev accounts too high"; (2) "Length of time revolving accounts have been established"; (3) "Amount owed on revolving accounts is too high"; and (4) "Too many inquiries last 12 months". (Def.'s 56.1 at p.46). The Factual Data Report lists the following under the "Scoring" section of the report: (1) "Serious delinquency and public record or collection filed"; (2) "proportion of balance to high credit on revolving accounts"; (3) "time since delinquency is too recent or unknown"; (4) "number of accounts with delinquency"; and (5) "FACTA: Number of inquiries affected the

---

[2] The Court notes that Plaintiff wrote to Defendant on February 6, 2020 regarding 20 allegedly fraudulent inquiries into his credit. (Pltf.'s 56.1 at p.25). That the 2018 Credit Report predates Plaintiff's February 6, 2020 letter alerting Defendant to those allegedly fraudulent inquiries renders their inclusion (assuming, *arguendo*, they have been included) in the 2018 Report immaterial to Plaintiff's claim in this matter. *See* 15 U.S.C. § 1681i(a). Similarly, the portion of Defendant's response dated March 28, 2020 provided by Plaintiff notes that Defendant blocked those inquiries from Plaintiff's credit report, removing them from consideration regarding the Factual Data Report. *See* (Pltf.'s 56.1 at p.39).

score". (*Id.* at p.44). The Factual Data Report also lists two "FACTA Regulatory Messages"; First, "Input address does not match file address(es)." Second, "The number of inquiries on the consumers [sic] credit file as adversely affected the credit score." Given that regulatory message relating to Plaintiff's address is excluded from the scoring section of the Factual Data Report while the message relating to the number of inquiries *is* included accords with the information in Defendant's February 27, 2020 response provided by Plaintiff that such personal information does not affect an individual's credit score. *see* (Pltf.'s 56.1 at p.32). Therefore, the personal information Plaintiff sought to revise is insufficient to shows a concrete reputational injury. *Seaman*, 2023 WL 2975152, at *17;

The Loan Application both bolsters the previous conclusion and forecloses a showing of financial injury. *Seaman*, 2023 WL 2975152, at *17. It lists: (1) "Length of time accounts have been established"; (2) "Proportion of loan balances to loan amounts is too high"; (3) "No recent revolving balances"; and (4) "Length of time revolving accounts have been established" as the reasons for denying Plaintiff's application. (*Id.* at p.43). The Loan Application does not reference Plaintiff's personal information at all. (*Id.*). To the extent that Plaintiff has experienced a harm, it is not traceable to the information Plaintiff contests in Defendant's report.

Accordingly, the Plaintiff has failed to demonstrate a concrete injury that is fairly traceable to Defendant's conduct such to be conferred standing under the Constitution. Consequently, this action is improperly before the Court.

## CONCLUSION

For the foregoing reasons, the Court DISMISSES this action for lack of subject matter jurisdiction and, consequently, DENIES Defendant's motions for summary judgment, to compel

Plaintiff to appear for deposition, and for sanctions against Plaintiff as moot.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 83 and terminate the action.

    SO ORDERED.

Dated:    September 23, 2023
            White Plains, New York

                                                  NELSON S. ROMÁN
                                            United States District Judge